RECEIVED

SEP 2 4 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

MT. HAWLEY INSURANCE CO.                    CIVIL ACTION NO. 12-890

VERSUS                                      JUDGE DOHERTY

ADVANCE PRODUCTS & SYSTEMS, INC.            MAGISTRATE JUDGE HANNA


## MEMORANDUM RULING

Currently pending before the Court are cross-motions for summary judgment, filed by plaintiff, Mt. Hawley Insurance Co. ("Mt. Hawley") [Doc. 15], and defendant Advance Products & Systems, Inc. ("APS") [Doc. 16].  By way of their respective motions, the parties seek a ruling as to how to calculate the coinsurance provision of the commercial property insurance policy Mt. Hawley issued to APS.  Specifically, Mt. Hawley seeks a judgment finding APS "is entitled to no additional monies under its Business Income (And Extra Expense) Coverage," whereas APS seeks a judgment "holding that the coinsurance penalty formula in Mt. Hawley's insurance policy form requires the use of actual income and expenses to determine the amount it must pay APS for its business income losses." [Doc. 15, p.1; Doc. 16, p.1] For the following reasons, Mt. Hawley's motion [Doc. 15] is DENIED, and APS's motion [Doc. 16] is GRANTED.

The following facts are not in dispute.  On September 12, 2010, a fire occurred at APS's facility in Scott, Louisiana, causing significant damage.   At the time of the fire, APS had Commercial Property Insurance coverage with Mt. Hawley[1], which included "Business Income (and

---

[1]The policy provided coverage from November 12, 2009 through November 12, 2010. [Doc. 1, ¶ 13]

Extra Expense)" coverage ("BI").[2] [Doc. 15-4, p. 2] The "Limit of Insurance" for BI coverage was $500,000.00, with a coinsurance percentage of 90%.[3] [Doc. 1-1, p.6]

The parties disagree as to how the coinsurance penalty is to be calculated.  Mt. Hawley contends the coinsurance penalty is to be calculated using APS's "projected Net Income for the 12 months following the inception of the policy"; APS contends the coinsurance penalty is to be calculated using APS's actual income.[4] [Doc. 1, ¶ 29; Doc. 5, p.9]

### Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

---

[2]"The general purpose of BI insurance is to protect the earnings which the insured would have enjoyed had no interruption or suspension occurred." *Maloney Cinque, L.L.C. v. Pacific Ins. Co., Ltd.*, 89 So.3d 12, 18 (La.App. 2012); *see also Cotton Bros. Baking Co., Inc. v. Industrial Risk Insurers*, 774 F.Supp. 1009, 1013 (W.D.La. 1989).

[3]Coinsurance is a "clause in property insurance requiring that the property be insured for a minimum percentage of its total value and making the insured a 'coinsurer' to the extent that the coverage falls below the specified minimum." Lee R. Russ, *Couch on Insurance*, § 1:3 (3rd ed. 2012); *see also id.* at § 220:3 ("The term 'coinsurance' means a relative division of the risk between the insurer and the insured."); *Home Ins. Co., New York v. Eisenson*, 181 F.2d 416, 418-19 (5th Cir. 1950)("In short, co-insurance clauses are designed to compel the insured, either as self insurer or otherwise, to carry insurance on the risk in an amount equal to the percentage of its value fixed by the particular clause").

[4]According to Mt. Hawley, to date, it has paid $5,376,603.21 to APS for both the damages to its property and the loss of business income. [Doc. 15-7, ¶ 5] Mt. Hawley asserts, of the $500,000 limit for BI insurance, it has paid $217,810.21 to APS, which constitutes the total amount of BI coverage to which APS is entitled pursuant to the policy. [Doc. 15-7, ¶¶ 14, 15] According to APS, the amount due under the policy for its BI losses is $484,989.41. [Doc. 16-3, ¶ 16] APS further asserts it cannot, without further information, "calculate what amount(s) of the payments that Mt. Hawley has already made should be credited against the $484,989.41 sum," in light of the manner in which Mt. Hawley has made payments to APS. [Id. at ¶ 17]

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e).  As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*,

16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990)(quoting *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986)).  The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is

a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990)(internal quotations and citations omitted).   The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## Applicable Law

The parties agree the contract is governed by Louisiana law.  "An insurance policy is a contract between the parties and should be construed by using the general rules of Interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also Fontenot v. Diamond B Marine Services, Inc.*, 937 So.2d 425, 428 (La.App.

4 Cir. 2006). "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract." *Cadwallader* at 580; La. Civ. Code art. 2045. "The parties' intent, as reflected by the words of the policy, determine [sic] the extent of coverage." *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La.2007).

The words of an insurance contract are not to be read in isolation, as "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La.R.S. § 22:881. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code art. 2046. "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ.Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ.Code art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ.Code art. 2049.

"When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000)(internal citations omitted). "Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage." *Id.* Coinsurances clauses are subject to "strict construction and the requirement of strict proof." *Home Ins. Co., New York v. Eisenson*, 181 F.2d 416, 419 (5th

Cir. 1950).

## Analysis

The sole dispute before this Court is whether the calculation set forth in the policy for determining the amount of the coinsurance penalty requires the use of actual net income and expenses (as APS argues), or projected net income and expenses (as Mt. Hawley argues). The Court begins with an overview of the pertinent portions of the policy. Section "A" of the policy sets forth the scope of coverage:

**A.**      **Coverage**

     **1.**      **Business Income**

     Business Income means the:

         **a.**      Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

         **b.**      Continuing normal operating expenses incurred, including payroll.

     . . . .

     We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations during the "period of restoration."

[Doc. 15-4, p.23 (emphasis in original)]

Section "C" of the policy ("Loss Conditions") provides, in pertinent part:

**3.**      **Loss Determination**

     **a.**      The amount of Business Income loss will be determined based on:

         **(1)**      The Net Income of the business before the direct physical loss or damage occurred;

         **(2)**      The likely Net Income of the business if no physical loss or damage had occurred . . . .

         **(3)**      The operating expenses, including payroll expenses, necessary to

resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

    **(4)**    Other relevant sources of information including:

        **(a)**    Your financial records and accounting procedures;

        **(b)**    Bills, invoices and other vouchers; and

        **(c)**    Deeds, liens or contracts

[Id. at 26, 27-28 (emphasis in original)]

Section "D" of the policy ("Additional Condition") sets forth the coinsurance provision.[5] That section provides in pertinent part:

**D.**    **Additional Condition**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

    a.  The Coinsurance percentage shown for Business Income in the Declarations; times

    b.  The sum of:

        (1)    The Net Income (Net Profit or Loss before income taxes), and

        (2)    Operating expenses, including payroll expenses,

        that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

---

[5]All parties agree APS was subject to the coinsurance provision.

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in Step 1.; and

3. Multiply the total amount of loss by the figure determined in Step 2.

We will pay the amount determined in Step 3. or the limit of insurance, whichever is less.  For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

[Doc. 15-4, p.28 (emphasis in original)] Accordingly, the first calculation set forth in the "Coinsurance" provision ("Calculation No. 1") determines whether or not the assured is subject to a coinsurance penalty; if the assured is subject to a coinsurance penalty, the second calculation ("Calculation No. 2") determines the amount of that penalty.

Finally, the coinsurance section of the policy then provides two examples of coinsurance calculations, the first representing an Assured who is underinsured (and who therefore must "rely on other insurance or absorb the loss"), and the second representing an Assured who is adequately insured (and thus, "no [coinsurance] penalty applies"):

**Example No. 1 (Underinsurance):**

| When: | The Net income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy would have been | $400,000 |
|---|---|---|
| | The Coinsurance percentage is | 50% |
| | The Limit of Insurance is | $150,000 |
| | The amount of loss is | $ 80,000 |

Step **1**:   $400,000 x 50% = $200,000
(the minimum amount of insurance to meet your Coinsurance requirements)

Step **2**:   $150,000 ÷ $200,000 = .75

We will pay no more than $60,000.  The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | | |
|---|---|---|
| | The net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $400,000 |
| | The Coinsurance percentage is | 50% |
| | The Limit of Insurance is | $200,000 |
| | The amount of loss is | $ 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%).  Therefore, the Limit of Insurance in this Example is adequate and no penalty applies.  We will pay no more than $80,000 (amount of loss).

[Doc. 15-4, pp. 28-29 (emphasis in original)]

Again, the sole issue before the Court is whether the calculation of the coinsurance penalty (i.e. Calculation No. 2) requires the use of actual or projected net income and operating expenses. Mt. Hawley argues "the Policy is clear and unambiguous that projected figures are to be used in the calculation of the monies due under the Business Income (And Extra Expense) Coverage." [Doc. 19, p.5] Mt. Hawley supports its argument by citing to the definition of "Business Income," which states "Business Income means the . . . Net Income (Net Profit or Loss before income taxes) *that would have been earned or incurred*"[6]; by citing to the section entitled "Loss Determination," which

_____

[6]Doc. 15-4, p.23 (emphasis added)

provides, in part, "The amount of Business Income loss will be determined based on . . . *The likely Net Income of the business if no physical loss or damage had occurred*"[7]; by citing to Calculation No. 1 of the Coinsurance provision, which explicitly utilizes "Net Income . . . and . . . Operating expenses . . . *that would have been earned or incurred (had no loss occurred)*" - i.e. projected profits - when determining whether or not a coinsurance penalty will be imposed; and by citing to the examples set forth in the coinsurance provision, which utilize projected figures.[8]  According to Mt. Hawley, "the plain language of the policy and the examples provided by the drafters of the Policy demonstrate there is no indication that 'actual numbers' are to be used." [Doc. 15-1, p.8] "Instead the projected values for Business Income are the values that are used throughout the calculation of Advance's co-insurance penalty." [Id.]

Contrarily, APS argues "the policy demands that APS's coinsurance penalty be calculated using its **actual** 'Net Income and operating expense for the 12 months following the policy's inception, or last previous anniversary date.'" [Doc. 16-1, p.6 (emphasis in original)] In support of its argument, APS notes Calculation No. 2, "which the policy explicitly directs as governing this

_____

[7]Mt. Hawley disregards the fact that at least two of the other three provisions contained in the "Loss Determination" section are not based upon projected numbers. [Doc. 15-4, p. 28(a)(1) and (a)(4)]

[8]Mt. Hawley additionally supports its argument with extrinsic evidence, in the form of an affidavit by Shannon Rusnak, a third party hired by Mt. Hawley to determine the amount of BI coverage to which APS was entitled. [Doc. 15-3] As parol evidence is generally not a proper consideration when interpreting a contract, the Court has disregarded the affidavit. *See* La. Civ. Code art. 2046.  Moreover, to the extent the affidavit addresses the issue before this Court, it does so in the form of providing this court with a legal conclusion as to the ultimate issue, which is also a questionable practice in circumstances where the opinion purports to usurp the function of the fact finder or determine the law for the Court. [Doc. 15-3, p.3 ("The Policy calls for the use of projected income in determining the co-insurance penalty.")] *See e.g. Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239-40 (5th Cir. 1983). Of further interest, Mt. Hawley states it "has exhaustively researched the calculation of the Business Income (And Extra Expense) Coverage and all resources consulted are consistent that projected figures are to be used throughout the calculations to determine the monies that the insured is entitled." [Doc. 19, p. 5] However, Mt. Hawley has not identified *any* of the "resources consulted." (Although not clear, Mt. Hawley might have identified those sources in a separate brief [Doc. 21, p.3]; however, the cited sources are not available to the Court, and the hyperlinks provided are inaccurate.)

-10-

issue – has no provision for the use of projected income and expenses." [Doc. 20, p.2] Alternatively, APS argues the policy is ambiguous and therefore must be construed in APS's favor.  In support of this argument, APS asserts that to the extent the examples set forth in the policy contradict the policy's language, the policy is internally inconsistent and ambiguous, and therefore must be construed in APS's favor.[9] [Doc. 16-1, p.6]  Boiled down to its essence, APS argues because Calculation No. 2 states only, "Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy" - but does not include the language from Calculation No. 1 "that would have been earned or incurred (had no loss occurred)" - Calculation No. 2 requires the use of *actual* net income, rather than projected net income.

All parties agree the amount of "business income" the policy will pay and the calculation determining whether a coinsurance penalty will or will not apply (i.e. Calculation No. 1) utilize projected figures.  The parties disagree as to whether the calculation determining the amount of any such coinsurance penalty (i.e. Calculation No. 2) calls for the use of actual or projected numbers. Again, that calculation provides:

> Instead, we will determine the most we will pay using the following steps:

> 1. **Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy** by the Coinsurance percentage;

> 2. Divide the Limit of Insurance for the described premises by the figure determined in Step 1.; and

> 3. Multiply the total amount of loss by the figure determined in Step 2.

---

[9]APS argues "the examples are demonstrably wrong under the policy's operative language," and that "the examples fail to segregate the determinations as to (i) whether a coinsurance penalty applies and (ii) what the insured's recovery will be when the penalty applies." [Doc. 16-1, pp. 11, 12]

**We will pay the amount determined in Step 3. or the limit of insurance, whichever is less.** For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

[Doc. 15-4, p.28 (emphasis added)] Notably absent from this calculation is the use of the phrase "that would have been earned or incurred," - i.e. "Multiply the Net Income and operating expense *that would have been earned or incurred (had no loss occurred)* for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage." Had Mt. Hawley intended Calculation No. 2 to use projected numbers, it could have easily so stated, just as it did in Calculation No. 1. However, Mt. Hawley did not. Accordingly, the Court finds the plain language of the policy would seem to support the use of actual net income in determining the amount of any coinsurance penalty. *Eisenson* at 419 (Coinsurance clauses are subject to "strict construction and the requirement of strict proof.")

However, the policy then provides an "example," which appears to utilize projected numbers for calculating the amount of the coinsurance penalty. The Court finds "Example No. 1" contradicts the plain language of the policy, as it uses projected figures rather than actual figures. Nevertheless, the policy language, as well as the examples were created by the insurer, and even assuming arguendo that it is reasonable to interpret the insurance policy as Mt. Hawley proposes, the Court would merely be left with an alternative reading of an ambiguous contract. Louisiana law requires "that insurance policy ambiguities be resolved in favor of coverage of the insured." *McAvey v. Lee*, 260 F.3d 359, 365 (5th Cir. 2001). Accordingly, even if this Court were to accept Mt. Hawley's contractual interpretation as a reasonable choice, this Court is "constitutionally required, as *Erie* held, to apply Louisiana law, which here mandates that we resolve the ambiguity by adopting the other reasonable interpretation that favors coverage for the benefit of the insured." *Id.*

In light of the foregoing, and being *Erie* bound, the motion for summary judgment filed by Mt. Hawley Insurance Co. [Doc. 15] is DENIED, and the motion for summary judgment filed by Advance Products & Systems, Inc. [Doc. 16] is GRANTED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ____24____ day of September, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE